**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**CLIFFORD ALLEN POWERS,**

        **Petitioner,**

**v.**                                 **Civil No. 3:05cv29**
                                        **(Judge Broadwater)**

**THOMAS MCBRIDE, Warden,**

        **Respondent.**

## REPORT AND RECOMMENDATION ON THE RESPONDENT'S MOTION TO DISMISS AND PETITIONER'S MOTION FOR LEAVE TO AMEND

On April 8, 2005, the *pro se* petitioner filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Because it appeared that the petition may be untimely, by Order entered August 1, 2005, the Court warned the petitioner that his § 2254 petition would be recommended for dismissal unless he could demonstrate that the petition was timely filed.[1] On August 5, 2005, petitioner responded to the Court's Order by filing supplemental information which showed that the petition was timely. Accordingly, the respondent was directed to file an answer.

The respondent filed both an Answer and a Motion to Dismiss or for Summary Judgment on November 23, 2005. On February 9, 2006, the petitioner filed a Motion for Leave to Amend his petition. After granting petitioner several extensions, petitioner filed his Reply to the Respondent's Motion to Dismiss on June 9, 2006.

---

[1] See Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) ("When a federal habeas court, prior to trial, perceives a pro se § 2254 petition to be untimely and the state has not filed a motion to dismiss based on the one-year limitations period, the court must warn the prisoner that the case is subject to dismissal pursuant to § 2244(d) absent a sufficient explanation, unless it is indisputably clear from the material presented to the district court that the petition is untimely and cannot be salvaged by equitable tolling principles or any of the circumstances enumerated in § 2244(d)(1).")

Accordingly, this matter, pending before me for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., is ripe for review.

## I.  Procedural History

In May 1997, petitioner was charged in a three-count indictment of one count burglary, one count grand larceny and one count third offense shoplifting  (Harrison County Circuit Court Case No. 97-F-124-1).  In September 1997, petitioner was charged in a one count indictment of breaking and entering (Harrison County Case No. 97-F-198-2).  Later that same term, petitioner was charged with a second count of third offense shoplifting (Harrison County Case No. 97-F-199-2).  At petitioner's request, all three of the indictments were consolidated for trial.

On April 15, 1998, a jury found petitioner guilty on all counts.  On May 1, 1998, the State filed a recidivist information against the petitioner.  The petitioner waived his right to a jury trial and entered a plea of guilty conditioned upon his right to appeal.  On May 22, 1998, petitioner was sentenced to four 1-10 year sentences plus habitual life, to be served consecutively.

Petitioner filed a direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals.  Petitioner's appeal was refused on May 30, 2001.  Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.

On July 11, 2001, petitioner filed a state habeas petition in the Circuit Court.  Petitioner's state habeas petition was denied on March 23, 2004.  Petitioner filed a petition for appeal which was refused on March 15, 2005.  This case was filed on April 8, 2005.

## II.  Issues Presented

**A.  Direct Appeal**

On direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals, Petitioner asserted the following errors at trial:

A) the court violated defendant's sixth amendment right to counsel when it denied the defendant's request to allow "stand-by" counsel take over representation during a critical stage of the trial;

B) the defendant was denied his fourteenth amendment due process rights when he was not granted access to legal resources sufficient to allow the defendant to properly prepare a defense;

C) the court violated the defendant's fourteenth amendment due process rights in sentencing the defendant to life in prison pursuant to the "Recidivist Information" in that the court considered prior convictions of the defendant that the state had agreed not to use pursuant to a prior plea agreement;

D) the sentence of life in prison is disproportionate to the character and degree of the offenses; and

E) the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial and require the application of the plain error doctrine.

On October 5, 2000, the Supreme Court of West Virginia granted petitioner's petition for direct appeal. However, on November 9, 2000, the court filed a supplemental Order clarifying the granting of petitioner's petition for appeal. In the supplemental Order, the Court stated that the petition for appeal was granted solely for consideration of Ground A, stand-by counsel.

Accordingly, petitioner, through counsel, filed an appellate brief arguing the following assignment of error:

When a defendant has been granted the right to self representation pursuant to the Sixth Amendment, and the trial court has appointed "hybrid" or "standby-by counsel" to assist the defendant, can the defendant later waive his Sixth Amendment right and allow "hybrid" or "stand-by counsel" to represent him?

Petitioner's conviction was upheld on appeal.

## B. <u>State Habeas Petition</u>

In his petition for writ of habeas corpus in the Circuit Court of Harrison County, petitioner asserted the following grounds for relief in his original *pro se* petition:

1) his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial were violated due to ineffective assistance of counsel;

2) his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial jury trial were violated due to prosecutorial misconduct;

3) his state and federal constitutional rights to equal protection, due process of law, and a fair and impartial trial were violated because the trial judge committed numerous reversible and prejudicial errors, including judicial misconduct;

4) the trial court sentencing him to a term of life imprisonment pursuant to the "Recidivist Information" violates the West Virginia Constitution because it is disproportionate to the character and degree of the offense and therefore constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution;

5) he was denied his Fourteenth Amendment due process rights when he was not granted access to any legal resources sufficient to allow him to properly prepare a defense for trial;

6) the trial court illegally violated his Fourteenth Amendment due process rights in sentencing him to life in prison under the recidivist information that contained prior convictions that the State had agreed not to use pursuant to a prior plea bargain agreement;

7) the trial court violated his Sixth Amendment right to counsel when it denied petitioner's request to allow stand-by counsel to take over representation during a critical stage of the trial;

8) the trial court, state prosecutor and defense counsel, committed numerous reversible and prejudicial errors in violation of petitioner's state and federal constitutional rights to equal protection, due process of law, and a fair and impartial trial, the cumulative effect of requires the application of the plain error doctrine; and

9) there may be other reversible and prejudicial errors that cannot be ascertained without a review of the record, transcripts, statements and exhibits of all the proceedings and all other rulings in this case and prior to the suppression hearings that were adverse to him;

On October 10, 2002, petitioner filed another *pro se* pleading which he titled

"Supplemental Amended Addendum to Petition for Writ of Habeas Corpus," and which

contained the following four additional grounds for relief:

> 10) the Circuit Court violated his right when the Judge entered into plea negotiations during a pre-trial conference on the morning of the petitioner's recidivist trial which violates Rule 11(e)(D) of the Rules of Criminal Procedure;

> 11) the State of West Virginia, through the Assistant State Prosecuting Attorney, violated petitioner's rights by failing to notify the Court "immediately upon conviction" as to her intention of pursuing a recidivist information against the petitioner;

> 12) the State's application of the <u>Losh</u> test is unconstitutional and violative of clearly established United States precedent; and

> 13) his post conviction habeas counsel violated his state and federal constitutional rights under the Sixth and Fourteenth Amendments by purposely, deliberately, willfully, and intentionally delaying and then abandoning petitioner's case.

On July 14, 2003, the *pro se* petitioner filed a second "Supplemental Amended

Addendum to Petition for Writ of Habeas Corpus" adding two more grounds:

> 14) certain of his constitutional rights to effective assistance of appellate counsel were violated when his appellate attorney intentionally delayed and abandoned his appeal; and

> 15) the trial judge abused his discretion by allowing the State to amend the Shoplifting indictments by deleting information used to obtain the indictments.

Finally, on July 25, 2003, petitioner, through appointed counsel, filed a third "Amended

Supplemental Petition for Writ of Habeas Corpus and Brief."  In that document, petitioners'

counsel raised the following grounds for relief:

> 1) the charge under West Virginia Code § 62-3A-1 in case no. 97-1-124-1 should have been dismissed or the jury should have been given a directed verdict of not guilty because the state did not prove the characteristics of the crime were present;

> 2) due to ineffective assistance of counsel the petitioner was denied his rights under the state and federal constitutions;

> 3) because the trial judge committed numerous reversible and prejudicial errors in violation of the petitioner's rights, petitioner's state and federal constitutional rights to

equal protection, due process of law, and a fair and impartial jury trial were violated in the following ways:

a) the court improperly refused to allow stand-by counsel to take over the defense;

b) petitioner's right to due process was violated by the failure of the court to allow him to testify in his own defense;

c) the circuit court violated petitioner's rights when the judge took part in plea negotiations during a pretrial conference on the morning of petitioner's recidivist trial;

d) the court erred in overruling petitioner's objections to the recidivist information filed by the State on May 1, 1998; and

e) the trial judge did not make himself clear regarding the implication of agreeing to the stipulation on previous shoplifting convictions.

4) the trial court erred in sentencing him to a term of life imprisonment pursuant to the recidivist information that violates the West Virginia Constitution because it is disproportionate to the character and degree of the offense;

5) the State twice violated his procedural rights when applying the recidivist statute to him because it failed to notify the court of its intention to file a recidivist information "immediately upon conviction" and by using petitioner's conviction in Harrison County case no. 81-F-76 to support the application of the recidivist statute;

6) petitioner was denied his Fourteenth Amendment due process rights when he was not granted access to legal resources sufficient to allow the petitioner to properly prepare a defense for trial; and

7) even if none of the many errors described above requires reversal by itself, the cumulative effect is such that reversal of the conviction is necessary.

After an evidentiary hearing, petitioner's state habeas petition was denied on March 23, 2004.

## C. **Habeas Appeal to West Virginia Supreme Court of Appeals**

On appeal of the denial of his state habeas petition, the Petitioner asserted the following assignments of error:

1) the lower court's final habeas order denying petitioner the requested relief is in error, is clearly wrong, fails to provide a definitive findings of fact and conclusions of law relating to each of the below listed assignments of error and includes personal bias and prejudice;

2) the lower court erred and/or abused its discretion when it denied the petitioner's request to dismiss the third offense shoplifting in Felony Case No. 97-F-124-2;

3) the lower court erred and/or abused its discretion in applying the doctrine of res judicata to the consideration of petitioner's claim alleging the denial of his right to have stand-by counsel take over his case, which request was properly invoking his right to counsel;

4) the lower court erred and/or abused its discretion by failing to make specific findings of fact and conclusions of law relating to whether or not the petitioner was denied his constitutional right to testify or if the petitioner made a knowing, intelligent and voluntary waiver of the right to testify;

5) the lower court erred and/or abused its discretion by denying there had been an improper plea negotiation between the court and the petitioner;

6) the lower court erred and/or abused its discretion in denying petitioner's relief pursuant to the same principle of law this Court adopted in overturning State v. Nichols, in that the petitioner's objection and preservation of the same issue was thwarted by the lower court's failure to provide the petitioner with a copy of the transcript of the proceedings. Secondly, the lower court erred and/or abused its discretion in permitting the stipulated prior convictions to be presented to a jury; and

7) the lower court erred in sentencing him to a term of life imprisonment pursuant to the recidivist information in that the sentence violates the West Virginia Constitution because it is disproportionate to the character and degree of the offense, and therefore, constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

On March 15, 2005, petitioner's appeal was rejected by the West Virginia Supreme Court of Appeals.

## D.  Federal Habeas Petition

Petitioner's federal habeas petition raises the following grounds for relief:

1) the West Virginia habeas court's final determination that there was sufficient evidence for the jury to convict the petitioner of the underlying third offense shoplifting in felony

case no. 97-F-124-2, is in violation of the United States Constitution, is clearly wrong, fails to provide a definitive finding of fact and conclusions of law, and therefore, is contrary to clearly established federal law as determined by the United States Supreme Court;

2) the decision by the lower circuit court to deny the petitioner's initial request to allow stand-by counsel take over representation during a critical stage of the trial , and the West Virginia Supreme Court's conclusion to uphold the convictions, amounted to an unreasonable application of the Supreme Court precedent, is in violation of the constitutional principles of the Sixth Amendment right to counsel, the right to a fair trial, the right to equal protection of the law, and due process of the law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution; is clearly wrong, and is therefore, contrary to clearly established federal law as determined by the Supreme Court;

3) the lower court's determination that the petitioner was not deprived of his right to testify is in violation of the constitutional provisions of the Fifth, Sixth and Fourteenth Amendments, is clearly wrong, fails to provide a definitive finding of fact and conclusions of law and therefore, is contrary to clearly established federal law as determined by the Supreme Court; and

4) the lower court's final habeas order denying any involvement or interference into the plea negotiation process resulted in an unreasonable application of Supreme Court precedent and is in violation of the equal protection and due process clauses of both the Fifth and Fourteenth Amendments to the United States Constitution, is clearly wrong, fails to provide a definitive findings of fact and conclusions of law and therefore, is contrary to clearly established federal law as determined by the Supreme Court.

## E.  Respondent's Answer

In his answer, the respondent generally denies that any violation of petitioner's rights occurred.  Moreover, in light of the dispositive motion filed the same day, the respondent reserves the right to present further evidence should the court find it necessary.

## F.  Respondent's Motion to Dismiss or for Summary Judgment

In his motion to dismiss or for summary judgment, the respondent concedes that the petitioner has had  full opportunity to present his claims to the state courts and that the claims raised in the instant petition are fully exhausted.  However, the respondent asserts that the

petitioner has failed to demonstrate that his confinement is imposed in contravention of the rights and protections guaranteed under the Constitution and requests the petition be dismissed.

In support of its motion to dismiss, the respondent asserts that petitioner raises claims of both state and federal constitutional violations. However, the respondent asserts that violations of state law and procedure do not form the basis for federal habeas relief and petitioner's state based claims should be dismissed.

In support of his motion for summary judgment, the respondent asserts that petitioner has failed to establish that he is entitled to any relief and that summary judgment is therefore appropriate. Specifically, the respondent argues that: 1) the evidence adduced at trial was sufficient to convince a reasonable juror that the petitioner was guilty of shoplifting; 2) the petitioner's claim regarding stand-by counsel was fully litigated below, does not raise an issue supported by "clearly established federal law," and does not establish a deprivation of his federal constitutional rights; 3) petitioner was not denied his constitutional right to testify when he first asserted it after he had rested and the state had presented a rebuttal witness; and 4) the petitioner's allegations regarding the trial court's role in plea negotiations are unsupported by the record and fail to establish a federal constitutional violation.

## G.  Petitioner's Motion to Amend

On February 9, 2006, petitioner filed a motion for leave to amend his § 2254 petition. In the motion, petitioner requests leave to amend ground one of his petition dealing with the sufficiency of the evidence in case number 97-F-124-1. Petitioner asserts that after reviewing the respondent's answer and the pertinent legal authority, he discovered that his sufficiency of the evidence claim should have also included a claim with respect to case number 97-F-198-2

and 97-F-199-2 because the prosecution failed to meet the burden of proof with respect to the identity of the accused.  Therefore, petitioner requests that he be permitted to amend his petition to include those claims under ground one.

**H.  Respondent's Response to Petitioner's Motion to Amend**

In response to the petitioner's motion to amend, the respondent filed a response in opposition to the motion in which the respondent makes three arguments.  First, the respondent argues that the petitioner's new claims are insufficiently pled because petitioner fails to put forth any evidence to show that his claims have merit.  Specifically, the respondent asserts that petitioner's bare allegation that the prosecution failed to prove his identity does not satisfy petitioner's burden of proof.

Second, the respondent asserts that petitioner's new claims are not exhausted. Specifically, the respondent asserts that petitioner has never, in any of his previous proceedings, claimed that his convictions under case numbers 97-F-198-2 and 97-F-199-2 were based upon constitutionally insufficient evidence.  Moreover, the respondent argues that if the Court were to allow petitioner to amend his petition to include these claims it would render his petition a "mixed petition."[2]  Therefore, the respondent argues that since this court does not have the authority to adjudicate a mixed petition, the Court would be required to either dismiss the petition *in toto* or require petitioner to sever the unexhausted claims.

Third, the respondent asserts that the petitioner's new claims are procedurally defaulted in state court thereby preventing a federal habeas court from granting petitioner relief on those claims.  Additionally, because petitioner has not shown cause and prejudice for his default, the

---

[2] A "mixed petition" being one that contains exhausted and unexhausted claims.

respondent asserts that the new claims should be dismissed.

## I.  Petitioner's Initial Reply to the Respondent's Motion to Dismiss

In his reply to the respondent's motion, the petitioner reiterates the arguments made in the original petitioner and makes new claims.  Pursuant to his sufficiency of the evidence claim, petitioner now also asserts:

(1) that the prosecution failed to present the alleged merchandise to the jury and failed to have the store clerks positively identify the defendant in court;

(2) the trial court violated his right to confrontation under the Sixth Amendment by failing to allow officer Boyle to testify;

(3) one of the store clerks provided trial testimony that was that was inconsistent with her preliminary hearing testimony and that the state knew this information was false;

(4) that the witnesses at the preliminary hearing all testified falsely and that Officer Boyle provided false and misleading information in his affidavit in order to obtain an arrest warrant;

(5) the state destroyed or withheld exculpatory evidence;

(6) he was denied certain legal documents at the regional jail that were pertinent to his defense;

(7) the trial court did not bifurcate his trial and its decision to admit evidence of his prior shoplifting convictions was improper; and

(8) the trial court withheld transcripts to protect itself from a possible civil rights violation and judicial misconduct charges.

## J.  The Respondent's Reply to the Petitioner's Initial Reply

In his reply, the respondent asserts that the new claims raised in petitioner's initial reply

to his motion to dismiss fail to establish any additional support for his insufficiency claim and should be dismissed.

**K.  Petitioner's Response to the Respondent's Additional Reply**

In this document, petitioner reargues some of the issues raised in his initial reply to the respondent's motion to dismiss.  Therefore, the Court will not reiterate those claims here.

### III.  Standard of Review

**A.  Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations.  Walker v. True, 399 F. 3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S.41,  45-46 (1957).  Additionally, a district court should construe pro se petitions liberally. See   Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (emphasizing the liberal construction rule for pro se complaints raising civil rights issues).

**B.  Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80 (1977).  So too has the Fourth Circuit Court of Appeals.  Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).

**C. Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that . . . the

applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. §

2254(b)(1)(A).  However, the federal court may not grant habeas relief unless the state court's

adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the

merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims

that were decided in state court, albeit in a summary fashion."  <u>Thomas v. Taylor</u>, 170 F.3d 466,

475 (4th Cir. 1999).  When a state court summarily rejects a claim and does not set forth its

reasoning, the federal court independently reviews the record and clearly established Supreme

Court law.  <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir.), <u>cert. denied</u>, 524 U.S. 830 (2001)(quoting

<u>Bacon v. Lee</u>, 225 F.3d 470, 478 (4th Cir. 2000)).  However, the court must still "confine [it's]

review to whether the court's determination 'resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States.'"  <u>Id.</u> at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court

arrives at a conclusion opposite to that reached by this Court on a question of law or if the state

court decides a case differently that this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a Petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, supra.

Here, the claims raised in the original petition were properly presented to the courts of the State. Because those claims were adjudicated on the merits in State court, the State's findings of fact and conclusions of law are due the appropriate deference.

## IV.  Analysis

### A.  Ground One - Sufficiency of Evidence in Case  97-F-124-1

As to ground one, petitioner contends that the lower court erred in finding that there was sufficient evidence for the jury to convict him of the underlying third offense shoplifting charge. In support of this claim, petitioner argues that the lower court incorrectly characterized the testimony of Ms. Walker.  Second, petitioner argues that the lower court should have reviewed a copy of a March 13, 1997, preliminary hearing in which Ms. Walker's testimony differed from her testimony at trial.  Third, petitioner alleges that his actions that day do not show an intent to steal the bottle of wine.[3]  And finally, the petitioner argues that the prosecution failed to show the necessary elements to convict because the arresting Officer was not permitted to testify due to a violation of the Court's sequestration Order, and the only testimony against him was that of the two store clerks.

The lower court, in denying this claim, specifically found:[4]

> The petitioner, Clifford Allen Powers, argues, in essence, that since he wasn't a very good shoplifter, that the evidence is insufficient to convict him of the offense of shoplifting.
>
> West Virginia Code 61-3A-1 defines shoplifting as follows:
> > (a) A person commits the offense of shoplifting, if, with intent to appropriate merchandise without paying the merchant's stated

---

[3]  Specifically, petitioner notes that he could have walked out the door with the bottle rather than going to the counter, that he was intoxicated, that he attempted to pay for the wine but that Ms. Walker would not accept his money, and that he had sufficient money to pay for the wine ($20) on him at the time of the alleged shoplifting.  Additionally petitioner makes an argument that the lower court assisted the prosecution by denying his request to bifurcate the trial and by permitting the jury to hear stipulated evidence of the petitioner's prior convictions.  However, the Court does not see how petitioner's last two contentions relate to his sufficiency of the evidence claim.

[4]  In the Order denying Petitioner habeas relief, the State court addressed several issues that were not raised in the instant Petition.  Those issues will not be addressed in this Order.

price for the merchandise, such person, alone or in concert with another person, knowingly:

(1) Conceals the merchandise upon his or her person in another manner; or

(2) Removes or causes the removal of merchandise from the mercantile establishment or beyond the last station for payment; or

(3) Alters, transfers or removes any price marking affixed to the merchandise; or

(4) Transfers the merchandise from one container to another; or

(5) Causes the cash register or other sales recording devise to reflect less than the merchant's stated price for the merchandise; or

(6) Removes a shopping cart from the premises of the mercantile establishment.

(b) A person also commits the offense of shoplifting if such person, alone or in concert with another person, knowingly and with intent obtains an exchange or refund or attempts to obtain an exchange or refund for merchandise which has not been purchased from the mercantile establishment.

With regards to the offense of shoplifting as contained in Felony Case Number 97-F-124-2, store employees, Regina Walker and Greg Hawkinberry, testified concerning the defendant's shoplifting at the Go-Mart located in Clarksburg, Harrison County, West Virginia.

The testimony of Ms. Walker indicated that another customer reported the shoplifting to Ms. Walker indicating 'that man back there put a bottle of wine under his jacket' (Trial transcript page 88). Ms. Walker further testified at page 89 of the Trial transcript 'when the defendant came up to the counter-you could see the bottle sticking out the top – I mean – the top of the bottle with the Go-Mart sticker on it'. When asked to describe how the defendant was carrying the bottle she responded:

A: 'Okay, he had it tucked under his arm – like that (indicating) and you could see the lid sticking out the top.
Q: Okay, how was he holding his arm?
A: Like – trying to conceal it.' (Trial Transcript pages 89-90).

Mrs. Walker further testified that the defendant continued to deny even possession of the bottle when confronted by the store clerk and her co-worker. (Trial transcript page 90). Ms. Walker further indicated that it was not until the police pulled up in front of the door that the defendant placed the bottle on the check-out stand and promptly exited the premises wherein he was stopped by the police.

Ms. Walker's co-worker, Greg Hawkinberry's testimony was consistent that the

defendant had the bottle under his jacket, under his arm, continued to deny even possession of the bottle and that there was an effort at concealing the bottle. (Trial transcript page 101).

Clearly, the trial jury had more than sufficient testimony in which it could base its finding of guilt of the defendant for shoplifting in Felony Case Number 97-F-124-2.

See Respondent's Motion to Dismiss (dckt. 15), Ex. 14 at 17-19 (the Circuit Court's Final Order Denying Petitioner for Writ of Habeas Corpus).

When reviewing a claim of the sufficiency of the evidence in federal habeas review, the district court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Based upon this court's independent review of the record, even though the state court did not specifically cite Jackson, the state court's adjudication of petitioners' claim is not contrary to clearly established federal law, nor does it involve an unreasonable application of the Jackson standard. Moreover, the state court's adjudication of this claim does not result in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[5] Accordingly, the undersigned is of the opinion that Ground One should be denied.

---

[5] Three of the issues raised by petitioner in his petition to support his claim -- the credibility of the witnesses, petitioner's intent or inability to form the requisite intent, and the weighing of evidence -- are issues that were resolved by the jury and are not within the province of federal habeas review. See Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001) ("When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence." ). Moreover, the undersigned does not believe that the lower court mischaracterized the testimony of Ms. Walker in denying petitioner state habeas relief. Rather, the Court simply restated, in its own words, the substance of her testimony.

In addition, the Court finds no support for this claim in petitioner's initial reply to the respondent's motion to dismiss. First, the petitioner did not present several of these issues to the courts of the state and they are unexhausted. To that extent, the petitioner has requested that the Court not consider those issues. Next, failing to allow officer Boyle to testify cannot be a Confrontation Clause violation

**B.  Ground Two - Denial of Stand-By Counsel**

This ground was raised on direct appeal and was addressed by the West Virginia

Supreme Court of Appeals in a published opinion.  See State v Powers, 563 S.E.2d 781 (W.Va.

2001).  In that opinion, the West Virginia Supreme Court found petitioner's claim should be

reviewed under an abuse of discretion standard[6] and further that the circuit court did not abuse its

discretion in denying the petitioner's request to allow stand-by counsel to take over the defense.

In addressing petitioner's claim, the State Supreme Court stated that "[i]t has long been

recognized that the assistance of counsel guaranteed by the Sixth Amendment to the Constitution

of the United States, and Article III, Section 14 of the West Virginia Constitution, embodies a

correlative right to waive the assistance of counsel."  State v. Powers, 563 S.E.2d at 786 (citing

Faretta v. California, 422 U.S. 806, 814 (1975)).  However, the Court also found that should a

criminal defendant elect to proceed without counsel, he does not have a right to standby counsel

and may be required to proceed unassisted with his or her defense.  Id. at 789 n. 4 (quoting

---

since he never testified.  Third, as previously mentioned, the credibility of the witnesses was an issue for
the jury that will not be overturned on federal habeas review.  Fourth, whether or not petitioner received
access to certain trial documents at the regional jail does not affect the sufficiency of the evidence.
Neither does the bifurcation of petitioner's trial. Finally, claims of judicial misconduct, false arrest
affidavits, the admission of his prior convictions, and the destruction of exculpatory evidence should have
been raised as separate claims.  Petitioner had the opportunity to raise all of his claims at the time the
initial petition was filed.  The failure to do so is petitioner's and the Court will not allow petitioner to
bring his claims in such piecemeal fashion.  In addition, at the time petitioner filed his additional claims,
the petition had been served and an answer had been filed.  Therefore, petitioner would need to seek
permission from the Court to amend his petition to include these claims, which he has not done.  See
Fed.R.Civ.P. 15(a).  Therefore, these claims will not be given further consideration.

[6] In order to establish the appropriate standard of review, the West Virginia Supreme Court, citing
United States v. West, 877 F.2d 281 (4th Circ. 1989), recognized that "once a defendant has elected to
proceed *pro se*, there is no absolute right to then relinquish the right of self-representation and have new
or standby counsel appointed to assume the defense."  State v. Powers, 563 S.E.2d at 784.  The Court
went on to cite several similar cases from other circuits in which an abuse of discretion standard was
applied.

<u>Faretta</u> at 835 n. 46) ("when a defendant waives his right to counsel, the trial court '*may* -- even over objection by the accused -- appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.'") (emphasis in original).

Moreover, the Court noted that the role of standby counsel is ambiguous because of "the variety of ways courts have defined the role." <u>Id.</u> at 787 (citing <u>McKaskle v. Wiggins</u>, 465 U.S. 168 (1984); <u>Faretta v. California</u>, 422 U.S. at 835 n. 460; and various circuit court cases). Therefore, if the trial court does appoint standby counsel, such ambiguity can easily be remedied by clearly expressing the duties of standby counsel at the time of the appointment. <u>Powers</u> at 788. Further, the Court noted that in this case, the trial judge advised the petitioner of the duties of standby counsel and that petitioner's request was outside the scope of the duties enumerated by the trial judge. <u>Id.</u> Thus, the West Virginia Supreme Court held that "when a *pro se* criminal defendant requests the trial court permit standby counsel to assume a duty set forth by the court in connection with its appointment of standby counsel, the court, in a proper exercise of its discretion, should grant the requests. However, where, as here, the defendant requests that standby counsel assume a role that is outside of the duties established by the court, further consideration by the circuit court is appropriate." <u>Id.</u>

In considering whether good cause exists to grant a request to allow standby counsel to assume a role outside of his established duties, the West Virginia Supreme Court established a five part balancing test similar to that utilized by the California Court of Appeals. <u>Powers</u> at 788-789 (citing <u>Brookner v. Superior Court</u>, 64 Cal.App.4th 1390, 1394 (1998)). That test is:

> when a pro se criminal defendant asks the circuit court to allow standby counsel
> to take over his or her trial defense, and the court has not previously ordered that

standby counsel be prepared to take over in the manner requested by the defendant, then in deciding whether to grant the defendant's request, the trial court should consider: (1) the defendant's prior history regarding the appointment of counsel, *e.g.*, the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.

Id. at 789.

Applying those factors to petitioner's case, the West Virginia Supreme Court of Appeals found that because of petitioner's history of dissatisfaction with his appointed counsel and the ensuing delays caused by petitioner's rejection of his appointed attorneys, the trial court had good reason to believe that petitioner was merely attempting to further delay the proceedings against him. Powers at 788. Additionally, the Supreme Court noted that petitioner gave no reason for his request and that the request was made on the second day of the trial, after the state had already rested its case. Id. Finally, the Court noted that petitioner's standby counsel was never notified that he could be called upon to take over the case and there is nothing in the record to show that standby counsel was prepared to do so if called upon. Id. Thus, the West Virginia Supreme Court found no error in the circuit court's denial of petitioner's request for substitution of standby counsel. Id.

In the motion to dismiss, the respondent notes that the decision of the West Virginia Supreme Court of Appeals was not contrary to clearly established law as expressed by the United States Supreme Court because the United States Supreme Court has never addressed this exact issue. Motion to Dismiss at 24. Specifically, the respondent argues that the United States Supreme Court has never clearly expressed what right, if any, a *pro se* criminal defendant has to

standby counsel and to what extent standby counsel is expected to take over a case once petitioner has voluntarily waived his right to counsel. Id. at 25. To this the Court agrees.

However, the respondent also appears to argue that petitioner's claim is not properly raised in a § 2254 proceeding for the same reason, *i.e.*, because the Supreme Court has never clearly expressed a right to substitute standby counsel. To this the Court disagrees. There is no requirement that a federal habeas petitioner raise only rights that are clearly expressed. Such an argument is nonsensical. More often than not, constitutional rights are not clearly expressed, thus one of the very reasons the federal courts exist. If federal habeas review was limited to only those rights which were clearly expressed, the law would never evolve. That is clearly not the case. The law changes all the time as does the extent to which constitutional rights are limited or expanded. Therefore, petitioner's claim is properly raised under § 2254. And, even though there may be no Supreme Court case directly on point with this one, there are cases that involve similar issues such as the right to self-representation which is at the core of petitioner's claim.

The right to self-representation was articulated by the Supreme Court in Faretta v. California, as noted by the West Virginia Supreme Court. Moreover, that Court also correctly noted that there is no absolute right to standby counsel. However, the Court found that where standby counsel is appointed, the role of such counsel should clearly be expressed and any request to deviate from that role should be examined in light of the specific facts of the case.[7]

---

[7] Petitioner fired two court appointed attorneys in this case. His second appointed attorney, Neal J. Hamilton was appointed as petitioner's standby counsel over petitioner's objection. The trial court conducted a thorough examination of petitioner prior to accepting his waiver of counsel and found that petitioner was knowingly, intelligently, and voluntarily waiving the right to counsel. After granting petitioner's request, the court outlined the duties of Mr. Hamilton as petitioner's standby counsel and warned petitioner that he could not change his mind in an untimely fashion and expect counsel to be

This approach and the West Virginia Supreme Court's assessment of the facts in petitioner's case, were not unreasonable. See Lainfiesta v. Artuz, 253 F.3d 151, 154 (2d Cir. 2001) (a trial court may not deprive a defendant of a qualified right, but may weigh it against competing interests such as the fair administration of justice); United States v. West, 877 F.2d 281, 286 (4th Cir. 1989) (finding no error by the trial court in denying a *pro se* criminal defendant's motion to substitute counsel for himself 11 days prior to trial because his waiver of counsel was knowing and intelligent and because of the countervailing public interest in proceeding on schedule); United States v. Solina, 733 F.2d 1208, 1211-1212 (7th Cir. 1984) ("A criminal defendant has a constitutional right to defend himself; and with rights come responsibilities. If at the last minute he gets cold feet and wants a lawyer to defend him, he runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule . . . "); United States v. Merchant, 992 F.2d 1091, 1095 (10th Cir. 1993) ("Once a defendant exercises his constitutional right to defend himself and proceed *pro se*, he does not have the absolute right to thereafter withdraw his request for self representation and receive substitute counsel").[8]

_____

reappointed. Moreover, at the time petitioner made his request for counsel, the trial was in it's second day and the state had already rested its case. Therefore, because of petitioner's knowing waiver, the trial court's warnings, petitioner's previous problems with counsel, the stage of the proceedings, and the possibility of unnecessary delay, the trial court denied petitioner's motion to have counsel take over his case. Based on those underlying factors, the West Virginia Supreme Court found that the trial court did not abuse its discretion in denying petitioner's motion.

[8] The Court finds no support for petitioner's argument in United States v. Cronic, 466 U.S. 648 (1984). Although the Supreme Court concluded that "a trial is unfair if the accused is denied counsel at a critical stage of his trial," the Court was referring to a complete denial of counsel. Id. at 659. More specifically, the Court stated that it has "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." Id. at n. 25 (citations omitted). In this case, petitioner was not denied counsel. In fact, petitioner had two court appointed attorneys, but was not happy with either one. Therefore, petitioner made a knowing and intelligent waiver of counsel. Moreover, although it was not required, the state court appointed standby counsel to help petitioner defend his case. The trial transcripts are replete with instances in which petitioner was given the opportunity to consult with standby counsel. Counsel

Accordingly, the undersigned finds that the determination of the state court was not contrary to or an unreasonable application of clearly established federal law. Moreover, the decision of the state court was not unreasonable in light of the facts presented in the state proceedings. Thus, petitioner is not entitled to relief on this claim.

## C. **Ground Three - Denial of Right to Testify**

This ground was addressed by the trial court in petitioner's state habeas proceedings. In denying the petitioner's state habeas petition, the Court found that:

> [t]he record, although not transcribed, indicates that at the first day of the proceedings on the 13th day of April, 1998, the petitioner herein, in chambers and out of the presence of the jury, was advised of his right to testify or not to testify pursuant to State vs. Newman, 371 S.E.2d 77 (W.Va. 1988). As acknowledged in his 'Amended Supplemental Petition for Writ of Habeas Corpus and Brief', the petitioner was again informed of his right to testify at the close of the day on the 14th day of April, 1997, again out of the presence of the jury. At that time, the Court, with the concurrence of the defendant, crafted a procedure in which, if the

was not totally absent nor was petitioner ever prevented from the assistance of standby counsel at any stage of the proceedings, critical or not.

In addition, although McKaskle v. Wiggins, supra, does suggest that a defendant can waive his Faretta rights, that case is factually distinguishable from the instant one. In McKaskle, petitioner was granted permission to proceed without counsel. However, petitioner was appointed "hybrid" counsel – meaning counsel participated in some aspects of the trial process, but not others and that counsel's representation of defendant was sometimes with his express permission and sometimes without. The Court found that petitioner's acceptance of counsel in some situations gave rise to a presumption of acceptance in other situations. Thus, the Court found "little force" to petitioner's argument that counsel's unsolicited participation was a constitutional violation. Moreover, the actual holding of McKaskle was that "[a] defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel - even over the defendant's objection - to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible even in the unlikely event that it somewhat undermines the *pro se* defendant's appearance of control over his own case." McKaskle v. Wiggins, 465 U.S. at 184. Moreover, McKaskle says that it is permissible for standby counsel to participate in the trial process, not that it is mandatory or that a constitutional violation would occur should the trial court deny the participation of standby counsel. Here, the trial court clearly outlined the duties of standby counsel and those duties did not include actual participation in the trial process. Therefore, petitioner's ability to control his own defense was never in question and the concerns addressed in McKaskle do not exist in this case.

defendant testified, he may have called himself as a witness and if, in the interim period of time, he decided not to testify that his assertion of that right would not be obvious to the jury and he could rest his case without calling any further witnesses. There were no objections to the Court's handling said matter in such a manner.

The Court would further find that at the hearing before the Court on the 9th day of April, 1998, the defendant was given the admonitions required by <u>State vs. Newman</u>, <u>supra.</u> (Hearing Transcript Page 65). Further, said hearing transcript at page 63 indicates 'let me further advise you as I am required to do - and I think we've done it at least on once prior to today. Do you understand, Mr. Powers, that you have an absolute right to testify in this matter? Do you understand that? You can take this. Mr. Powers' answered yes I do understand that.'

The full context of further dialog between the defendant and the Court concerning his wanting to offer evidence or to testify is found at Trial Transcript Pages 449 and 455. The request of the defendant was not in the context of the defendant testifying but of the offering of a tape concerning the operation of the defendant's arm. (Trial Transcript Page 450).

The defendant was given ample advisement of his right to testify or not testify, as he so chose, a procedure was set up in which the defendant's refusal would not be obvious to the empaneled jury so as not to create any prejudice on the defendant's election not to testify and, in fact, the defendant indicated that he did not wish to testify.

<u>See</u> Respondent's Motion to Dismiss (dckt. 15), Ex. 14 at 23-24 (the Circuit Court's Final Order Denying Petitioner for Writ of Habeas Corpus).

"At this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." <u>Rock v. Arkansas</u>, 483 U.S. 44, 49 (1987). However, the "right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' But restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify

the limitation imposed on the defendant's constitutional right to testify." Id. at 55-56 (internal citations omitted).

Here, the respondent argues that the trial court "has a compelling interest in the orderly conduct of its proceedings." Motion to Dismiss at 30. The respondent further argues that after giving consideration to the procedural process of the case, the petitioner's past conduct, the untimeliness of his request, the disruption in the proceedings, and the unfairness to the state, the trial court properly denied petitioner's request to testify. This denial, the respondent asserts, did not arbitrarily limit the petitioner's right to testify.

It is not disputed that petitioner was advised on several occasions of his absolute right to testify. On the day before he was to present his case, and during a discussion as to the proposed jury instruction, the following exchange took place:

> The Court: Okay, and I'll note for Mr. Powers' benefit the only -- there -- there are alternative paragraphs on the bottom of page four (4) and the top of page five (5) depending on whether Mr. Powers does or does not intend to testify. I mean-- if you testify I give one (1) paragraph and strike through the other, and if you don't the Court strikes through the other and gives the one (1). Mr. Powers-- I guess-- have you made a decision at this point, sir, to -- that you are or are not going to testify?

> Mr. Powers: I feel that I will testify -- to the facts and what I know and what happened on those occasions in my -- the state of mind I was in.

> The Court: Okay -- I mean -- we'll -- we'll leave that -- I mean -- you don't have to make that decision today, but just -- that'll let me know which way you're leaning and certainly at some point tomorrow when we're out of witnesses -- and if you plan on -- you may call yourself as the first (1st) witness, but if you want to call yourself as a later witness when you're out of (witnesses) -- you know -- you let me know whether you're going to call yourself, and at the end of the process if you don't have any more witnesses I'll know that you're not going to testify.

> Mr. Powers, do you have any objections to the court's charge as now drafted?

Trial transcripts (Ex. 17) at 292.

The trial court interpreted this exchange as a crafted procedure in which, "if the defendant testified, he may have called himself as a witness and if, in the interim period of time, he decided not to testify that his assertion of that right would not be obvious to the jury and he could rest his case without calling any further witnesses." Moreover, the trial court took stock in the fact that petitioner did not object "to the Court's handling said matter in such a manner."

During the defendant's case-in-chief, he presented several witnesses. After the testimony of all of petitioner's subpoenaed witnesses, the petitioner stated: "I have no further witnesses, Your Honor." Trial transcripts (Ex. 17) at 428. At that time, the Court asked counsel to approach and asked the prosecution whether or not it intended to call any rebuttal witnesses. Id. The prosecution said that it had one rebuttal witness to whom petitioner objected. Id. at 428-429. Petitioner's objection was overruled and the bailiff was directed to determine if the witness was present. Id. at 429. Upon finding that he was, the parties were directed back to their tables and the prosecution called its rebuttal witness. Id. at 429-430. Despite the fact that the parties were at a sidebar out of the hearing of the jury, and despite the fact that petitioner was proceeding *pro se*, the Court did not instruct petitioner on his right to testify.

After the state's rebuttal witness testified, the Court again asked the parties to approach and asked the prosecution whether it had any further rebuttal witnesses. Trial Transcripts (Ex. 17) at 449. When the prosecution replied that it did not, petitioner was asked if he had any surrebuttal. Id. The petitioner stated that he wanted to introduce a tape. The Court found that the tape was not appropriate surrebuttal. After some further discussion, the Court said:

> The Court: And – you know – you've said you didn't have any witness to introduce that evidence through.
>
> Mr. Powers: I was going to introduce myself and you haven't asked me if I was

going to testify yet today, Your Honor.

The Court: Well, I don't have to ask you – Mr. Powers. I've told you a half a dozen times you have the right to do that – I don't have to tell you – ask you every day.

Mr. Powers: You just asked my last night if I was going to testify and you said – well, we'll wait till today so I assumed you was waiting for –

The Court: No, I told you yesterday that if you wished to testify you just call yourself as the next witness – you rested without doing that. I mean – I don't have to beg you to testify, Mr. Powers – I mean I've told you at least three (3) on the record this – that you had the right to testify and there may have been more occasions, and that choice is yours. I mean you rested without calling yourself as a witness.

Mr. Powers: I didn't hear myself – she said she just had a rebuttal witness – you asked me if I had any further witnesses.

The Court: And you said no.

Mr. Powers: And then I objected because she was using my witness and I – you all thought I was – beings that it was my witness –

The Court: Well, Mr. Powers, that's flat out false and you know that. I mean – you know – if you want to lie to the Court that's fine and if you want to lie to this record that's fine, but – I mean I gave you an opportunity to continue presenting evidence and you said you had nothing else – nothing else to present. Now –

Trial Transcripts (Ex. 17) at 452-453.

During the evidentiary hearing on petitioner's state habeas petition, petitioner stated that although he knew he had an absolute right to testify, he did not understand the court's "crafted procedure." Hearing transcript (Ex. 20) at 64. He said he clearly stated the day before that he intended to call himself as a witness. Id. The next day, he thought he was supposed to testify after the presentation of the state's rebuttal witness. Id. at 65. Petitioner further stated that he would have testified to the court about his drug and alcohol addictions to give the jury some

information related to the testimony of the expert witness the state presented on rebuttal. <u>Id.</u>

It is clear that petitioner had an absolute right to testify in this case. Whether he was denied that right is a closer question. Petitioner was proceeding without counsel. There is no specific rule in the West Virginia Rules of Criminal Procedure that would have prohibited petitioner from testifying after the state's rebuttal testimony, although such would not be common practice. Again, however, petitioner was proceeding without counsel. He was unskilled in the law and procedure. The fact that petitioner was not unfamiliar with the legal system does nothing to negate the fact that he did not know the intricacies of legal procedure. Allowing petitioner to testify after the prosecution presented its rebuttal witness would not have unduly interrupted the procedures. In fact, the only parties likely to know the unusualness of the act would have been the lawyers and court employees. Moreover, despite the fact that the court advised petitioner of his right to testify on several prior occasions, given that petitioner was proceeding without counsel it would have been prudent of the trial court to advise him of his right to testify when he rested his case without testifying.

However, even if this court were to find that the state's decision with regard to this claim was an unreasonable application of clearly established federal law, as previously noted, habeas corpus relief is not warranted unless the constitutional trial error had a substantial and injurious effect or influence in determining the jury's verdict. <u>Brecht v. Abrahamson</u>, <u>supra</u>. In this case, the undersigned does not believe that the failure to allow petitioner to testify was prejudicial to his case. The evidence against petitioner was overwhelming. There were several eyewitnesses that placed petitioner at the scene of the crimes. Indeed, petitioner did not argue that he was not the perpetrator of the crimes, only that he was not guilty by reason of insanity due to addiction.

However, petitioner presented evidence of his drug and alcohol addictions when he presented his defense. Not only did petitioners' father and a family friend testify to the severity of his addictions, but petitioner also called several experts to present evidence that his addictions could cause blackouts and negate his intent to commit the crimes. These facts were largely undisputed by the prosecution.

In addition, on cross-examination of the prosecution's witnesses, several admitted that petitioner smelled of alcohol or appeared to be intoxicated during the commission of the crimes. In fact, in one instance, one of the witnesses offered testimony that narcotics were found on petitioner at the time he was arrested[9] and several other witnesses testified that the petitioner's actions during the commission of the crimes did not appear sane. It seems clear that the issue of petitioners' addiction and the extent to which it played a part in his crimes was an issue the jury decided against petitioner. Petitioner merely would have offered more specific information on the amount and types of drugs and alcohol in his system. However, based on a totality of the evidence before the jury, the undersigned believes that this would not have changed the outcome of the proceedings. Accordingly, petitioner is not entitled to habeas relief on this ground.

## D. __Ground Four - Court's Involvement in Plea Negotiations__

In ground four, petitioner alleges that the lower court erred in denying any involvement or interference into the plea negotiations. In support of this claim, petitioner asserts that the lower court does not deny that plea negotiations took place, but merely denies that it was involved in those negotiations. However, petitioner asserts that the circuit court later contradicts itself when it admits that petitioner desired to offer a guilty plea to the recidivist information and

---

[9] Trial transcripts (Ex. 17) at 142.

that a conversation about that plea did in fact occur.  In further support of his claim, petitioner references a speech made by the trial judge at his recidivist pre-trial hearing. Petition at 17 (citing RT pgs. 24-26, 11. 18-10)

According to petitioner, he filed a motion to review the record of his prior convictions at some point prior to his recidivist trial.  However, he was not able to review those records until the day of his recidivist pre-trial motion hearing.  After reviewing some of those materials, petitioner objected to certain parts of the recidivist information.  At that time, the trial judge went off the record and had everyone but petitioner leave the room.  Petitioner asserts that he never made a plea proposal to the judge and that even if he did, that offer should have been referred to the prosecution.  Petitioner alleges that this is a clear violation of Rule 11(e)(1)(D) of the West Virginia Rules of Criminal Procedure, which states that "[t]he court shall not participate in any such discussions."  Petition at 17.  Petitioner asserts that the judge involving himself in the plea negotiations destroys any appearance of impartiality and constitutes clear error for which his sentence should be overturned.

This ground was raised by petitioner in his state habeas proceedings.  In denying this ground, the state court found:

> There is no evidence in the record to suggest that the Court, either on or off the record, engaged in any plea negotiations between the petitioner, his stand-by counsel, prosecuting Attorney or others.

> What the Court attempted to do was, in light of the petitioner's desire to offer a guilty plea to the Recidivist Information that was filed against him, preserve the petitioner's right to appeal the ruling of the Court.  There is no evidence of any impropriety on the part of the Court.  In fact, a review of the record indicates that in connection with the hearing on the recidivist proceedings, it was the Court that encouraged the making of a full and complete record, *inter alia*, by calling the prior counsel of the petitioner's in order that they could testify and make a record which an appellate court could review.

See Respondent's Motion to Dismiss (dckt. 15), Ex. 14 at 25.

A trial judge's involvement in plea negotiations is not per se a violation which would require reversal of a plea agreement.  See Brown v. Peyton, 435 F.2d 1352 (4th Cir. 1970). Moreover, a trial judge is not constitutionally prohibited from initiating plea bargaining.  See United States ex re. Robinson v. Housewright, 525 F.2d 988 (7th Cir. 1975).  "A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business."  Brady v. United States, 397 U.S. 742, 753 (1970).  However, Rule 11 forbids the court from participating in plea negotiations. Under Rule 11, the judge's role is limited to acceptance or rejection of the plea agreement after a thorough review of the relevant factors.  Nonetheless, "Rule 11's unqualified prohibition of judicial involvement in plea bargaining will not necessarily invalidate every instance of judicial participation in the negotiation of a guilty plea in state court.  Generally, judicial participation in plea negotiations is prohibited as a constitutional matter when it is so great as to render a guilty plea involuntary."  See German v. United States, 525 A.2d 596, 602 n. 8 (D.C.C. 1987) (citations omitted).

 In this case, petitioner merely asserts that the trial judge involved himself in plea negotiations in violation of Rule 11.  However, petitioner does not assert that the trial judge's participation exerted any undue influence over the negotiations so as to render his plea involuntary.  Thus, even if the trial judge was involved in the plea negotiations in this case, petitioner is not entitled to habeas relief as a result of that participation.

## V.  Petitioner's State Claims

To the extent that petitioner asserts claims under the West Virginia Constitution or the procedural rules of the State of West Virginia, those claims should be dismissed.  See 28 U.S.C. § 2254(a) ("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States")(emphasis added); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (it is not the province of a federal habeas court to "reexamine state-court determinations on state-law questions"); Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999) (questions of state laws and statutes are not cognizable on federal habeas review).

## VI.  The Circuit Court's Lack of Definitive Findings of Fact and Conclusions of Law

W.Va.Code §53-4A-7(c) requires a West Virginia court denying a request for habeas relief to enter a written order, "mak[ing] specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced . . . clearly stat[ing] the grounds upon which the matter was determined, and . . .  stat[ing] whether a federal and/or state right was presented and decided."

Open a review of the circuit court's Order denying petitioner state habeas relief, the undersigned finds that the court clearly fulfilled its statutory obligation in this regard.  In the Final Order Denying Petition for Writ of Habeas Corpus, the circuit court outlined the labyrinthine facts and procedural history of this case, explained the grounds and claims advanced by the petitioner, stated clearly the grounds upon which each was determine, and on which its determinations were made.  However, even assuming *arguendo* that the memorandum

opinion and order varied slightly from the norm, based upon a strict reading of the code provision, this Court finds that any minor discrepancy associated therewith does not rise to the level of a constitutional violation.  See Estelle v. McGuire, supra.

## VII.  Petitioner's Motion to Amend

For the reasons set forth by the respondent in his Reply to the Petitioner's Motion to Amend, the motion should be denied.  First, petitioner's claims are insufficiently pled.  See Rule 2(c) of the Rules Governing Section 2254 Proceedings; see also Blackledge v. Allison, 431 U.S. 63, 75 n. 7 (1977).

Second, petitioner asserts sufficiency of the evidence claims that were never raised in any of his state court proceedings.  Thus, those claims are not exhausted.  See 28 U.S.C. § 2254(b)(1)(A).  If the Court were to permit petitioner to amend his petition to include those claims, his petition would then become a mixed petition.  See Rose v. Lundy, 455 U.S. 509, 511 (1982); Pliler v. Ford, 542 U.S. 225 (2004).  Were that the case, the Court would be required to dismiss petitioners' claims *in toto*, or sever the unexhausted claims.  See Id.  Such action would at best leave petitioner with the petition as it currently stands.

Finally, because petitioner failed to timely raise his claims in state court in a procedurally correct manner, his claims are procedurally defaulted.  See Coleman v. Thompson, 501 U.S. 722 (1991); see also Whitley v. Blair, 802 F.2d 1487, 1500 (4th Cir. 1986).  Because petitioner has failed to allege, much less establish, cause and prejudice for his default, this Court is barred from reviewing those claim in federal habeas review.  See Gray v. Netherland, 518 U.S. 152, 161-162 (1996).

## VIII.  Recommendation

For the foregoing reasons, it is the recommendation of the undersigned that the petitioner's Motion for Leave to Amend (dckt. 21) be DENIED. In addition, it is the recommendation of the undersigned that the respondent's Motion to Dismiss and for Summary Judgment (dckt. 15) be GRANTED and that the petitioner's § 2254 petition be denied on the merits and DISMISSED WITH PREJUDICE.[10]

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner and any counsel of record.

DATED: July 24, 2006.


/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

---

[10] Any additional claims not specifically raised in the petition and addressed in this Order should also be denied.